# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| JENNIFER WEITLAUF, on behalf of herself and all others similarly situated, | ) ) ) ) | CIVIL COMPLAINT |
| Plaintiff, | ) ) | |
| v. | ) ) | CASE NO. |
| GREGORY L. HOPKINS, | ) ) | **JURY DEMAND** |
| ROY J. RICHARDS, | ) | |
| BRADLEY C. WILLIAMS, | ) ) | |
| G.L. HOPKINS ENTERPRISES, LLC, | ) ) ) | |
| RJR ORG. LLC, | ) ) | |
| GPG PROCESSING, LLC, | ) ) | |
| SOURCE SOLUTIONS MANAGEMENT, LLC, | ) ) ) | |
| STANDARD MANAGEMENT ASSOCIATES, LLC, | ) ) ) | |
| QUALITY RESOLUTION SERVICES, LLC, | ) ) ) | |
| 4CIS, INC., | ) ) | |
| ASSET RETENTION GROUP, LLC, | ) ) | |
| PREMIER ASSET MANAGEMENT GROUP, INC., | ) ) ) | |
| CHANGING THE COMMUNITY, INC., and | ) ) ) | |
| JOHN DOE CORPORATION #s 1–10, | ) ) | |
| Defendants. | | |

## CLASS ACTION COMPLAINT

## INTRODUCTION

1.     The majority of debt collection in the United States is performed by businesses that make significant efforts to comply with the restrictions imposed on debt collectors by the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* Such businesses generally provide some version of the required disclosures, including freely stating their true names, and they usually refrain from making outrageous threats or collecting on debts that they don't have at least a colorable right to collect.

2.     There exists, however, a vast and seedy underbelly of the American debt collection industry that is populated by pseudonymous debt collectors who conceal their identities behind series of nondescript, unregistered, and short-lived names, who give out only UPS private mailbox addresses and "855" telephone numbers to debtors and regulators alike, and who can therefore engage in the worst sort of debt collection abuses safe in the knowledge that their anonymity renders them nearly invulnerable.

3.     Pseudonymous debt collectors commonly employ collection tactics that unambiguously violate the FDCPA as their default strategy.  For instance, they often begin the collection process by calling relatives and acquaintances of their targets so as to use those individuals to harass and shame their targets into payment.  Similarly, they often falsely threaten to serve consumers with vaguely described "papers" at their places of employment, thereby threatening consumers with severe embarrassment or even adverse employment actions.  They also often falsely threaten liens, garnishment, or the repossession of property.

4.    Pseudonymous debt collectors, being shady, unreliable, and often fleeting by nature, can acquire and collect on only the very lowest quality of debts.  Their usual fare includes payday loans that have already been worked by other collectors, out-of-statute debts, and other debts for which the likelihood of repayment is extremely low.

5.    Because pseudonymous debt collectors do not report debts to credit reporting agencies or file collection lawsuits — to do either would require abandoning anonymity — they have little reason to worry about their ability to prove that the debts they collect upon are still owed, let alone that the debts are properly owed to them.

6.    Anonymous debt collectors therefore commonly collect on "bad paper," meaning spreadsheets of the personal information of purported debtors that have been sold off after the debts they record have been paid, or that have been stolen by an employee of one debt collector and fenced to another.  Anonymous debt collectors thus often lack the right to collect upon the debts that they seek to collect.

7.    The vast majority of the pseudonymous debt collectors just described are based in one of just four locations:  (1) the Buffalo-Rochester, New York metro area; (2) the Atlanta, Georgia metro area; (3) the Riverside, California metro area; and (4) the Charlotte, North Carolina-Rock Hill, South Carolina metro area.  Of these, the Buffalo-Rochester, NY metro area is home to the largest concentration of such debt collectors.

8.    The set of pseudonymous debt collectors operating in each of these locations is deeply interconnected, with both owner-operators and individual collection agents moving between and among an ever-changing stable of business entities that are created and discarded by the owner-operators at will in order to evade liability.

[ 3 ]

9.      Defendants Gregory L. Hopkins and Roy J. Richards are significant players in the Buffalo-Rochester, NY metro area pseudonymous debt collection network, and Defendant Bradley C. Williams, formerly of Rochester, NY, is presently attempting to establish himself as such a player in the Charlotte, NC-Rock Hill, SC metro area.  All three are repeat "customers" of FDCPA attorneys like the undersigned.

10.     The business filings, Paycheck Protection Program applications, criminal prosecutions, and civil forfeiture actions involving these three individuals and their relatives reveal that Messrs. Hopkins, Richards, and Williams have registered at least eight separate business entities to use as vehicles for their pseudonymous collection activities, and that all but two of these entities is associated with a warehouse located at 40 Humboldt St., Rochester, NY 14609.  Public records reveal numerous additional links, including shared private mailboxes, shared insurance, and even common ownership among the business entities associated with Defendants Hopkins, Richards, and Williams leading to the inescapable conclusion that the individual Defendants' business interests are deeply interconnected.

11.     Given the secretive nature of the various entities, the illegality fundamental to their business model, and the fraudulent payments between the individual Defendants recently detailed in a civil forfeiture case involving Defendant Williams, there is no reason to believe that these entities observe corporate formalities or even that they operate as separate businesses at all.  Rather, it appears the business entity Defendants are but convenient fictions through which the individual Defendants process payments and handle payroll for a unified illegal collections enterprise.

[ 4 ]

12.     Because this unified illegal collections enterprise collects primarily or entirely "bad paper," such that no member of the enterprise has a legal right to collect most or all of the debts that its members attempt to collect—and such that no member of the enterprise can ever be sure that they have the right to collect any given debt—no reasonable debtor would pay on any debt purportedly owned by Defendants if not for Defendants' incessant threats and misrepresentations.

13.     Every dollar of revenue that Defendants have brought in by means of their illegal collections enterprise is therefore a dollar of economic damages suffered by an individual member of the proposed class.

### NATURE OF THE ACTION

14.     Plaintiff brings this putative class action pursuant to the Fair Debt Collection Practices Act ("FDCPA") under 15 U.S.C. § 1692 *et seq.*, the Racketeering Influenced Corrupt Organizations Act ("RICO") under 18 U.S.C. § 1961 *et seq.*, and New York General Business Law § 349.

### JURISDICTION AND VENUE

2.     This action arises under the FDCPA and RICO.  Subject matter jurisdiction is conferred upon this Court by 15 U.S.C. § 1692, as well as 28 U.S.C. §§ 1331 and 1337, as the action arises under the laws of the United States.  Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367.

3.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) as a majority of the Defendants reside within this District and a substantial part of the events giving rise to the claims occurred within this District.

## PARTIES

4.    <u>Plaintiff Jennifer Weitlauf</u> ("Plaintiff") is a natural person who resides and resided in Clermont County, Ohio at all times relevant to this action.

### Individual Defendants

5.    <u>Defendant Gregory L. Hopkins</u> ("Hopkins") is a natural person residing, on information and belief, at 135 Holyoke Street, Apt. 2B, Rochester, New York, 14615. Hopkins is the half-brother of non-party Travell Thomas, who is presently an inmate at the Federal Correctional Institution—Loretto, Pennsylvania.  On November 1, 2016, Mr. Thomas pled guilty to Conspiracy to Commit Wire Fraud and Wire Fraud, 18 U.S.C. §§ 1349 & 1343, in the S.D.N.Y., for operating an illegal debt collection scheme substantially similar to that described in this complaint.

6.    <u>Defendant Roy J. Richards</u> ("Richards") is a natural person residing, on information and belief, at 300 Chatham Gardens, Apartment B, Rochester, NY 14605.

7.    <u>Defendant Bradley C. Williams</u> ("Williams") is a natural person residing, on information and belief, at 646 Dewey Ct., Fort Mill, South Carolina 29715, and formerly residing at 316 Roesewood Terrace, Rochester, NY 14609.  Williams is a former Registered Broker and Registered Investment Advisor, CRD# 5622102.  On February 2, 2019, FINRA barred Williams from all industry roles for financial misconduct.  On June 21, 2021, Williams pled guilty to one count of Financial Institution Fraud, 18 U.S.C. § 1344, in the W.D.N.Y., for a separate scheme in which he created 173 fraudulent checks, deposited them into an account belonging to 4CIS, Inc., and then attempted to distribute $50,000 of the $67,558 obtained to himself, Hopkins, and RJR Org. LLC.

[ 6 ]

**Holding Company Defendants**

8.     Defendant G. L. Hopkins Enterprises, LLC ("GLHE") is an active New

York limited liability company listing its address for service as "G. L. Hopkins

Enterprises, LLC, 135 Holyoke Street, Apt. 2B, Rochester, New York, 14615."  On

information and belief, Hopkins is the sole member and sole employee of GLHE and

freely and continuously comingles personal and GLHE funds while disregarding

corporate formalities.  GLHE has also listed its address as "3465 Genesee Street,

Cheektowaga, NY 14225" in public filings.

9.     Defendant RJR Org. LLC ("RJRO") is an active New York limited liability

company listing its address for service as "Gregory P. Salmon, 40 Humboldt Street,

Rochester, New York, 14609."  On information and belief, Richards is the sole member

and sole employee of RJRO and freely and continuously comingles personal and RJRO

funds while disregarding corporate formalities.

**Collection Entity Defendants**

10.     Defendant GPG Processing, f/k/a Revenue Management Group, LLC

("GPG") is an active New York limited liability company listing its address for service

as "GPG Processing, LLC, 40 Humboldt Street, Rochester, New York, 14609."  GPG lists

Defendant Hopkins as its owner and GLHE as its manager in public filings.  Both GPG

and Source Solutions Management, LLC have publicly listed "P.O. Box 246, Buffalo, NY

14225" as a contact address.  GPG holds itself out as a third-party debt collector.

11.    <u>Defendant Source Solutions Management LLC</u> ("SSM") is an active New York limited liability company listing its address for service as "40 Humboldt Street, Rochester, New York, 14609."  SSM lists Hopkins, Richards, GLHE, and RJRO as its officers in public filings.  In addition to sharing Buffalo P.O. Box 246 with GPG, it also uses the private UPS mailbox at 620 Park Ave., #159, Rochester, NY 14607, which it shares with Defendants 4CIS, Inc. and Standard Management Associates, LLC.  SSM has also obtained workers' compensation insurance via a joint plan with Defendant Quality Resolution Services, LLC.  SSM holds itself out as a third-party debt collector.

12.    <u>Defendant Standard Management Associates, LLC</u> ("SMA") is an active New York limited liability company registered by Defendant Williams and listing its address for service as "4519 Main St., Amherst, NY 14226."  In 2020, SMA applied for and received a $19,300 loan from the Paycheck Protection Program.  On its application, SMA listed the private UPS mailbox at "620 Park Ave., #159, Rochester, NY 14607" as its address.  That individual mailbox (#159) has also been used by Defendants 4CIS, Inc., and SSM to receive payments.  SMA holds itself out as a third-party debt collector.

13.    <u>Defendant Quality Resolution Services LLC</u> ("QRS") is an active New York limited liability company listing its address for service as "Roy Richards, 40 Humboldt Street, Rochester, New York, 14609."  QRS shares a private UPS mailbox with Defendants SSM and 4CIS, Inc. and has also shared workers' compensation insurance with SSM.  QRS holds itself out as a debt collector.

[ 8 ]

14.     Defendant 4CIS, Inc. ("4CIS") is an active New York corporation registered by Defendant Williams and listing its address for service as "4CIS, Inc., 40 Humboldt Street, Rochester, New York 14609."  4CIS shares a private UPS mailbox with Defendants SSM and QRS.  4CIS holds itself out as a third-party debt collector.

15.     Asset Retention Group, LLC ("ARG") is an active New York limited liability company listing its address for service as "40 Humboldt Street, Rochester, New York, 14609."  ARG has registered the fictitious name "Capitol Solutions Group" in Pennsylvania, where it uses the address "P.O. Box 21326, Philadelphia, PA 19141." ARG holds itself out as a third-party debt collector.

16.     Premier Asset Management Group, Inc. ("PAMG") is an active New York corporation listing its address for service as "40 Humboldt Street, Rochester, New York, 14609."  PAMG's website lists its address as "P.O. Box 21326, Philadelphia, PA 19141." In 2021, PAMG applied for and received a loan of $89,110 through the Paycheck Protection Program.  On its application, PAMG listed its address as 135 Holyoke St., Rochester, New York 14615, which is the home address of Defendant Hopkins, who has also listed PAMG as his employer.  PAMG holds itself out as a third-party debt collector.

17.     Defendants John Doe Corporation #s 1–10 ("Doe Corps 1–10") are other, presently unknown business entities owned or managed by the individual Defendants and operated by them as pseudonymous debt collectors in the same vein as GPG; SSM; PAMG; SMA; QRS; 4CIS; and ARG.

**Other Defendant**

18.    <u>Defendant Changing the Community, Inc.</u> ("CTC") is an active New York corporation listing its address for service as "Business Filings Incorporated, 187 Wolf Road, Ste. 101, Albany, NY 12205."  Defendant Hopkins is the owner and primary manager of CTC.  Unlike the other entities described above, CTC holds itself out not as a third-party debt collector but as a football training camp for the benefit of the community.  On information and belief, CTC has no existence independent of Hopkins, who freely and continuously comingles personal and CTC funds while disregarding corporate formalities.  Specifically, on information and belief, Hopkins uses funds acquired via his illegal debt collection activities to fund the activities of CTC and then draws a "clean" salary through CTC in order to shield his income from legal action. CTC has recently satisfied a $40,000 judgment against it for failing to maintain workers compensation insurance.

**Defendants' Ownership and Control**

19.    On reference and belief, Hopkins is an owner, officer, member, or manager of GLHE; GPG; SSM; PAMG; and CTC.

20.    On information and belief, Hopkins is also an owner, officer, member, or manager of SMA; QRS; 4CIS; ARG; and Doe Corps 1–10.

21.    On information and belief, Hopkins directly and indirectly controls the collections process at each of these entities (excepting CTC), including by selecting and/or designing call scripts, overseeing the hiring and training of workers, and setting FDCPA compliance guidelines or ordering the disregard thereof.

22.     On reference and belief, Richards is an owner, officer, member, or manager of RJRO; QRS; and SSM.

23.     On information and belief, Richards is also an owner, officer, member, or manager of GPG; PAMG; SMA; 4CIS; ARG; and Doe Corps 1–10.

24.     On information and belief, Richards directly and indirectly controls the collections process at each of these entities, including by selecting and/or designing call scripts, overseeing the hiring and training of workers, and setting FDCPA compliance guidelines or ordering the disregard thereof.

25.     On reference and belief, Williams is an owner, officer, member, or manager of 4CIS and SMA.

26.     On information and belief, Williams is also an owner, officer, member, or manager of GPG; SSM; QRS; PAMG; ARG; and Doe Corps 1–10.

27.     On information and belief, Williams directly and indirectly controls the collections process at each of these entities, including by selecting and/or designing call scripts, overseeing the hiring and training of workers, and setting FDCPA compliance guidelines or ordering the disregard thereof.

28.     Defendants acted through their agents, employees, officers, members, directors, heirs, successors, assigns, principles, trustees, sureties, subrogees, representatives, and insurers at all times relevant to the instant action.

## BACKGROUND

### *The Enterprise*

29.     Defendant Gregory L. Hopkins has been active on the Buffalo-Rochester, New York debt collection scene since at least 2015, when he and his first known company Revenue Management Group, LLC—which later changed its name to GPG Processing, LLC ("GPG")—were first sued for violating the FDCPA.

30.     In that case, Hopkins and his company, which was operating under the unregistered pseudonym, "Recovery Management Services" were alleged to have violated the FDCPA by threatening a debtor with personal service at his place of employment and even criminal charges purportedly authorized by the Dallas County Sheriff's department.

31.     GPG f/k/a Revenue Management Group, LLC has been sued at least eleven additional times for substantially similar alleged violations, generally involving giving false names and threatening lawsuits, repossession, and/or criminal charges.

32.     On information and belief, the allegations in each of these lawsuits were substantially accurate and provide an accurate picture of the modus operandi of Defendants and their employees.

33.     Defendant Roy J. Richards has been active on the Buffalo-Rochester New York debt collection scene since at least 2018, when he began operating Defendant Source Solutions Management, LLC ("SSM") as its managing member according to his profile on Ladders.com.

34.    Defendant Hopkins became a member and/or officer of SSM either upon its creation or shortly thereafter according to public records.

35.    SSM has been sued for violations of the FDCPA at least eleven times, including at least two instances in which it and GPG were sued jointly.  The allegations in these cases included the use of false and misleading names (including claiming to be a "mediation" company), attempts to collect debts not owed and out-of-statute debts, threats of legal action that SSM could not and did not intend to take, and even threats of arrest.

36.    On information and belief, the allegations in each of these lawsuits were substantially accurate and provide an accurate picture of the modus operandi of Defendants and their employees.

37.    Defendant Bradley C. Williams was been active on the Buffalo-Rochester New York debt collection scene from at least 2018, when he registered Defendant 4CIS, Inc., until at least mid-2019, when he moved to the Charlotte, North Carolina/Rock Hill, South Carolina area.

38.    4CIS has been sued once for violations of the FDCPA.  That suit alleged the use of a false and misleading name, claims to be a "mediation company," and false threats of litigation, personal service at the debtor's place of work, and seizure of the debtor's assets.

39.    Williams has continued to cooperate with Hopkins and Richards since his move from one hotbed of pseudonymous debt collection to another.  For example, more

than a year later Williams remained listed as the point of contact with a payment processor for a company whose website was registered by Richards.

40.     On information and belief, Hopkins, Richards, and Williams (the "Individual Defendants") operate, and operated at the time of the events detailed in the following section regarding the harassment of Plaintiff, a unified business consisting of an undifferentiated mass of debt collector employees.

41.     On information and belief, all of Defendants' employees work from an office at 3465 Genesee Street, Cheektowaga, NY 14225.

42.     On information and belief, none of these employees can be described as an employee of any single one of GLHE, RJRO, GPG, SSM, SMA, QRS, 4CIS, ARG, PAMG, or any of Doe Corps 1–10 (the "Collection Entity Defendants").  Rather, at any given time the collection employees working for Defendants collect in the name of a single pseudonym that may or may not resemble that of an extant business entity from Defendants' network, and deposits of payments received from consumers are distributed between accounts belonging to different Collection Entities to meet the needs of the Defendants, especially those concerning the avoidance of bank and/or law enforcement suspicion and protection from litigation.

43.     On information and belief, employees are often paid from accounts belonging to different business entities in different months, depending on where the Enterprise as a whole happens to have money when payroll day arrives.

44.     In the alternative, it is possible that the Individual Defendants operate and have operated the Collection Entity Defendants in sequence, generally having only one

or two per Individual Defendant active (receiving payments and paying payroll) at a given time, and that individual Collection Entity Defendants do have distinct pools of employees in up to three locations:  3465 Genesee Street, Cheektowaga, NY 14225, 40 Humboldt St., Rochester, NY 14609, and an unknown location in South Carolina or North Carollina.

45.     In that case, on information and belief Defendants regularly transfer employees between and among their locations in Cheektowaga, Rochester, and the Carolinas and/or have employees of one entity make calls on debts nominally belonging to another entity.

46.     Also in that case, on information and belief, Defendants regularly transfer spreadsheets of debtor between and among collection entities with little or no consideration or paperwork involved.  Specifically, on information and belief, Hopkins and Richards transferred the spreadsheet containing Plaintiff's information—after their own employees in Buffalo or Rochester had already called Plaintiff and successfully collected from her—to Williams in the Carolinas so that his own employees could comb over the debts again.  On information and belief, this transfer was made either without consideration or in exchange for funds that were intended to be received from the check fraud scheme resulting in Williams's recent conviction.

47.     Given the nature of the Collection Entity Defendants, and given the histories of all three Individual Defendants, any transfer of debtor information between any of the Defendants is necessarily done with full knowledge of the that the information will be used to collect debts for which the recipient does not have good title

[ 15 ]

using a common set of misrepresentations and outright lies supplemented with threats

of litigation, repossession, and even prosecution.

48.     On information and belief, Defendants also share tips and techniques for

threatening purported debtors into paying debts they do not owe without rising to the

level that would bring down a federal prosecution like the one that resulted in the

incarceration of Hopkins's half-brother.  Specifically, on information and belief, the

scripts used by all employees of all Collection Entity Defendants were provided by

Hopkins to Richards and Williams as well as their employees.

49.     On information and belief, Defendants obtain all debtor information that

they employ in their collection processes by purchase from disaffected employees of

other debt collectors who are double selling paper, by purchase of out-of-statute debt

from legitimate debt collectors, and by transfer between and among themselves.

50.     In the alternative, on information and belief, Defendants obtain a

significant portion of the debtor information that they employ by the means detailed in

the preceding paragraph, and they do not maintain an adequate separation within their

own files such that they can later tell legitimate debts from illegitimate or semi-

legitimate debts.  Moreover, on information and belief, they do not maintain contracts

or a relationship with the sellers of any legitimate or semi-legitimate debts they

purchase that would enable them to obtain the documents necessary to prove

ownership.

51.     As a result, no reasonable person would pay Defendants a penny absent

their misrepresentations and threats.

*The Harassment of Plaintiff*

52.     In 2014, Plaintiff took out a "Check N' Go" payday loan debt (the "Debt").

53.     Plaintiff signed the contract for the Debt while in Ohio.

54.     Plaintiff used the payday loan to cover her everyday living expenses, such as groceries, rent, utility bills, and the like.

55.     After Plaintiff's account went into default, "Check N' Go" sold the Debt to JTM Capital Management, LLC.

56.     JTM Capital Management, LLC is a buyer of defaulted consumer debts that regularly outsources collection of these accounts to third-party debt collectors.

57.     Sometime in 2019, JTM Capital Management, LLC either outsourced collection of the Debt or sold the Debt outright, after which it, on information and belief, began travelling down the chain of legitimacy until it reached a pseudonymous debt collector like those described in the introduction to this Complaint.

58.     This pseudonymous collector, operating under the false consumer-facing name "Management Associates," began attempting to collect upon this debt.

59.     In its correspondence with Plaintiff, "Management Associates" employed a private UPS mailbox that was, at that time, rented to Defendant Quality Resolution Services, LLC ("QRS").

60.     Additionally, in its correspondence with Plaintiff, "Management Associates" employed an email with the domain www.mgtassocs.com, which was registered by Defendant Richards through Domains by Proxy.

61.     In its correspondence with Plaintiff, "Management Associates" indicated that it would accept payment through a legitimate third-party payment processor known as SimplicityCollect.  SimplicityCollect's sole point of contact for "Management Associates" was Defendant Williams.

62.     On information and belief, "Management Associates" was, to the extent that any of the Defendant entities have separate existences, Defendant QRS.

63.     On information and belief, information about the Debt was received by QRS as "bad paper" stolen from another collector or otherwise transferred illegally.

64.     On information and belief, QRS lacked the right to collect upon the debt.

65.     QRS called Plaintiff's daughter and revealed the existence and nature of the Debt, and it also indicated that this was a "legal matter" for Plaintiff.

66.     This communication resulted in a conversation between Plaintiff and Plaintiff's daughter that caused Plaintiff shame, embarrassment, and emotional distress.

67.     QRS also called Plaintiff and threatened to serve her with papers in person at her place of employment.

68.     This threat was false.  Even if QRS had the capacity to sue Plaintiff—which it does not, because it is not, on information and belief, a registered business in Ohio, the only state where venue would be proper under 15 U.S.C. 1692i(a)(2)—it never intended to serve her with papers at her place of employment.

69.     Almost without exception, legitimate debt collectors who sue consumers in Ohio state courts serve those suits by certified mail pursuant to Rule 4.1(A)(1) of the

Ohio Rules of Civil Procedure—not by in-person service pursuant to Rule 4.2(B), which requires a cumbersome process involving a special request to the clerk.

70.     QRS offered to settle the entire balance of the Debt for $500.

71.     Plaintiff, having been scared and bullied by QRS's threats, accepted this offer and paid the sum of $500 to QRS.

72.     Plaintiff would not have made this payment but for QRS's harassing and misleading conduct, described above.

73.     Then, for some months, Defendants left Plaintiff alone.

74.     In September 2020, a pseudonymous entity, operating under the false consumer-facing name "Allied Management" began to call Plaintiff about the Debt.

75.     In its correspondence with Plaintiff, "Allied Management" employed a private UPS mailbox that was used by Defendant Standard Management Associates, LLC ("SMA") as its business address when applying for its second PPP loan.

76.     On information and belief, "Allied Management" was, to the extent that any of the Defendant entities have separate existences, Defendant SMA.

77.     On information and belief, SMA received information about the Debt in the form of "bad paper" that was "transferred" from QRS.

78.     On information and belief, both SMA and QRS knew or should have known that QRS did not own the debts shown on the paper sold by QRS to SMA.

79.     On information and belief, SMA never acquired a right to collect the Debt.

80.     In its correspondence with Plaintiff, SMA stated that it had not received "payment in full" as of September 25, 2020, on Plaintiff's "Check N' Go" debt, and further stated that Plaintiff was "legally liable" for the amount of $1,501.01.

81.     Both representations were false.  Plaintiff had settled the entire balance with QRS for $500 the previous year.

82.     Therafter, SMA placed a call to Plaintiff's mother-in-law and threatened to repossess a vehicle if the Debt were not paid.

83.     This threat was false, as SMA did not have any type of lien against the vehicle and had no legal ability to repossess it.

84.     Rather than pay the same debt a second time, Plaintiff retained counsel.

<u>CLASS ALLEGATIONS</u>

85.     Plaintiff realleges the paragraphs above as though fully set forth herein.

86.     Plaintiff brings this action, pursuant to Rules 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of herself and as a representative of a class consisting of:

> All natural persons who have made or will make payments to Defendants or any business entity under their ownership or control, whether through a third-party payment processor or directly, as partial or total satisfaction or settlement of a debt, where the debt was not originally owed to Defendants or any business entity under their ownership or control.

87.     The class is so numerous that joinder of all class members in this action would be impracticable; upon information and belief, there are thousands of persons in the class.

[ 20 ]

88.    PPP loan amounts received by Defendants, which may be obtained from public records and translated directly to a minimum payroll amount necessary to qualify, show the absolute minimum amounts collected by Defendants in an average year (assuming payroll as the sole expense).  Those amounts are:

    **a.**  GPG - $37,800 in 2020, translating to a payroll of $181,440 in 2019.

    **b.**  SMA - $19,300 in 2020, $19,300 in 2021, translating to a payroll of $92,640/year in 2019 and 2020.

    **c.**  PAMG - $89,110 in 2020 and $50,980 in 2021, translating to a payroll of $427,728 in 2019 and $244,704 in 2020.

89.    Such amounts could not possibly have been obtained from fewer than 40 individuals.  On information and belief, there are thousands of class members.

90.    Such amounts are also useful because the total calculated payrolls for 2019 and 2020 represent the minimum damages conceivably suffered by the members of the class in 2019, and 2020.

91.    Defendants have acted and continue to act on grounds generally applicable to each member of the plaintiff class, thereby making appropriate final declaratory and injunctive relief with respect to the class as a whole.

92.    Class members' claims present common questions of law and fact and these questions predominate over any individual questions.

93.    The common questions of law include, but are not limited to:  whether Defendants' practices in obtaining spreadsheets of debtor information without obtaining title to the debts recorded thereon, and of then employing false and frautulent

representations and threats transmitted by wires and the mails, violate the FDCPA,

RICO, and the New York General Business Law.

94.     The common questions of law include, but are not limited to:  whether

Defendants purchased bad paper, whether Defendants trained their employees to

violate the FDCPA and mislead and threaten debtors into paying on debts they do not

owe, and whether Defendants provided their employees with call scripts instructing

likewise.

95.     Plaintiff will fairly and adequately protect the interests of all members of

the proposed class because she has the requisite personal interest in the outcome of this

litigation and has no interest antagonistic to any member of the proposed class.

96.     Plaintiff is represented by Hilton Parker LLC.  Attorneys at Hilton Parker

LLC are experienced in complex federal litigation and class action litigation.

97.     A class action is the superior method for fair and efficient adjudication of

this matter in that Defendants have acted in a manner generally applicable to the class

and a class action will avoid numerous sperate actions by class members.

98.     Moreover, it would be impracticable for potential plaintiffs, who are

primarily low-income individuals without the resources to retain counsel or even track

down Defendants, to bring suit on an individual basis for their claims.  Their rights may

as well be meaningless without certification of a class action for common redress.

## COUNT I — FAIR DEBT COLLECTION PRACTICES ACT

99.    Plaintiff realleges the paragraphs above as though fully set forth herein.

100.    Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) of the FDCPA.

101.    The Individual Defendants and the Collection Entity Defendants are "debt collectors" as defined by § 1692a(6) of the FDCPA because the principal purpose of their businesses is the collection of debts, and because it uses the instrumentalities of interstate commerce to do so.

102.    In the alternative, the Individual Defendants and the Collection Entity Defendants are "debt collectors" under § 1692(a)(6) because they regularly collect or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

103.    The actions of QRS and SMA violated:

    **a.**  § 1692b and § 1692c(b) because they contacted Plaintiff's daughter and mother-in-law and revealed the existence of the debt.

    **b.**  § 1692d(6) because they, on multiple occasions, placed telephone calls to Plaintiff without meaningfully disclosing its identity.

    **c.**  § 1692e(2)(A) because they falsely represented that Plaintiff's debt was still due and owing, when she in fact had settled it entirely.

    **d.**  § 1692e(5) because they falsely threatened to sue Plaintiff and falsely threatened to have her served at her place of employment.

    **e.**  § 1692e(14) because they used names other than their true business names.

**f.**   § 1692f(1) because they sought to collect a debt to which they had no legal right.

**g.**   § 1692f(6)(A) and (B) because they falsely threatened to repossess a vehicle when they had no right or intention to do so.

104.    The Individual Defendants are liable for the actions of QRS and SMA because they jointly own, manage, and oversee QRS and SMA, including by jointly choosing call scripts and otherwise overseeing the collections process and FDCPA (non)compliance.   The Holding Company Defendants are also liable because each is an alter ego of one of the Individual Defendants, having no separate funds, no separate decision making, and generally no separate existence.

105.    The Collection Entity Defendants are all liable for the actions of QRS and SMA because each is an alter ego of every other Collection Entity Defendant, including QRS and SMA, because each comingles funds with every other, because each shares the most or all of the same owners, officers, and employees and operates from the same one or two office spaces, and because none meaningfully observes corporate formalities.

106.    CTC is liable for the actions of QRS and SMA because it is an alter ego of Defendant Hopkins, having no separate funds, no separate decision making, and generally no separate existence.

107.    In the alternative, CTC is liable for the actions of QRS and SMA because Hopkins fraudulently transfers funds obtained by means of FDCPA violations by QRS and SMA collectors to CTC for the purpose of avoiding seizure by creditors and otherwise concealing the origin of his income.

108.    In the alternative, all defendants are liable for the actions of QRS and SMA because all conspired together with the intent to violate the FDCPA for mutual financial gain and committed overt acts in furtherance of that goal, and because the violations relating to Plaintiff and other members of the proposed class were foreseeable consequences of their conspiracy.

### COUNT III – RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT
(Civil RICO, 18 U.S.C. § 1962(c))

109.    Plaintiff realleges the above paragraphs as though fully set forth herein.

110.    Plaintiff is a natural person, and as such is a "person" within the meaning of 18 U.S.C. § 1961(3).

111.    Defendants are business entities and natural persons, and as such are "persons" within the meaning of 18 U.S.C. § 1961(3).

### *The Enterprise*

112.    Hopkins, Richards, Williams, GLHE, RJRO, GPG, SSM, SMA, QRS, 4CIS, ARG, PAMG, CTC, and Doe Corps 1–10 together form an association-in-fact and constitute an enterprise within the meaning of 18 U.S.C. § 1961(4) (the "Enterprise"). Each and every Defendant is associated with the Enterprise.

113.    The purpose of the Enterprise is to collect debts that are not legally owed to the Defendants by first illegally obtaining spreadsheets of debtor information and then calling debtors—many of whom have already paid off the listed debts and none of whom owe any money to Defendants—in order to extort payment from them by means of fraudulent and deceitful representations that the debts are still owed, that the debts

are owed to Defendants, and that the debtors face lawsuits, repossession, adverse

employment actions, and in some cases even arrest if they do not make payments to

Defendants.

114.    The relationships among Defendants go back at least to 2018, when

Hopkins and Richards first filed a public document indicating that both were involved

in the management of SSM, though they may well go back to 2015, when Hopkins, on

information and belief, began to take over of his half-brother's enterprise following his

indictment.  The relationships continue to this day, as demonstrated by the shared

private mailboxes still in use by separate Collection Entity Defendants registered by

different Individual Defendants.

115.    For at least three years, the Enterprise has been engaged in and continues

to be engaged in, activities that affect interstate commerce.  Defendant's unlawful

enterprise in violation of Rico has been and remains longstanding, continuous, and

open-ended.

116.    On information and belief, Hopkins purchases the bad paper that forms

the basis of the Enterprise's fraudulent and deceptive debt collection strategy and

distributes spreadsheets of debtor information to Richards and Williams.  In the

alternative, Richards and Hopkins purchase their bad paper jointly and distribute a

portion of it to Williams.

117.    On information and belief, the Individual Defendants purchase

spreadsheets of debtor information jointly and distribute them among their

undifferentiated mass of employees on an ad hoc basis.

118.    In the alternative, Defendants Hopkins and Richards purchase spreadsheets of debtor information and distribute some of them to Williams and the rest among their own employees, who are split between at least two separate business entities but whose nominal employers change on a semi-regular basis as the Individual Defendants kill off business entities that have earned too much attention.

119.    On information and belief, the false and misleading representations made by the collection agent employees of the Individual Defendants and the Collection Entity Defendants are made with the knowledge of—and indeed following the trainings and scripts given by—their employers.

### Pattern of Racketeering Activity

120.    Defendants, individually and as part of the Enterprise, have engaged, directly or indirectly, in a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

121.    Defendants, acting individually and as part of the Enterprise, have devised a scheme to defraud and to obtain money or property by means of false or fraudulent pretenses and representations and threats.  Each Defendant's participation is, and was at all relevant times, critical to the racketeering scheme.  They enabled, conducted, and maintained the racketeering scheme by:

      a.    Obtaining spreadsheets of debtor information while knowingly failing to obtain title to the listed debts or any right to bring suit to collect them;

    **b.**      Providing debt collection agents with training and call scripts instructing them to misidentify their employers, falsely claim entitlement to collect debts, falsely threaten litigation, falsely threaten personal service at consumers' places of employment, falsely threaten repossession and/or seizure of bank accounts, and even falsely threaten arrest and criminal prosecution;

    **c.**      Operating one or more debt collection call centers in which debt collection agent employees then performed as trained and employed false and fraudulent representations and threats to trick or frighten consumers into paying on debts that they either did not owe to and/or could have no reason to believe they owed to Defendants;

    **d.**      Collecting the proceeds from their debt collection agent employees and redistributing them between and among themselves in a way intended to shield their scheme from discovery by banks, law enforcement, and potential creditors.

122.    Defendants do not collect debts in person, but rather do so solely over the telephone and via regular and electronic mail.  Defendants have therefore used the mails and wires in connection with every debt that they have collected using false and fraudulent representations and threats, and each use of the mails and wires has furthered the fraudulent scheme and enabled Defendants to take money and property from Plaintiff and putative class members by means of false and fraudulent representations and threats.

123.    Defendants have, on information and belief, made false and fraudulent representations and threats and thereby obtained payments in the following specific instances, in addition to those that targeted Plaintiff:

    **a.**  On or about December 6, 2019, an employee and agent of Defendants (or, alternatively, primarily SMA and/or 4CIS) falsely told consumer Victoria Dyer that they had hired a process server to serve her with an already-filed lawsuit and would be freezing her bank accounts, resulting in Ms. Dyer making a $100 payment over the phone;

    **b.**  At some point during late 2020 or early 2021, an employee and agent of Defendants (or, alternatively, primarily SSM), falsely told consumer Craig Baldinger that he would go to jail if he did not immediately pay on a debt belonging to his ex-wife, resulting in Mr. Baldinger making $850 in payments over the phone;

    **c.**  Defendants have engaged in substantially similar conduct on thousands of other occasions that Plaintiff cannot identify at this time but that are known to Defendants, as evinced by the significant amount of revenue they have received and declared in their PPP applications.

124.    Additionally, Williams has recently pled guilty to a predicate act, namely violation of 18 U.S.C. § 1344 (financial institution fraud), which the government has alleged he committed in order to make payments to Hopkins and Richards.  On information and belief, these payments were to be made in furtherance of the goals of the Enterprise, either as distributions of proceeds or as payment for bad paper.

125.    In connection with Defendants' scheme, the acts of racketeering activity have occurred after the effective date of the RICO statute and on countless occasions over a period of years but within ten years of each other.  The acts of racketeering are an ongoing part of Defendants' regular way of doing business.  The predicate acts have been and will be repeated over and over again.

126.    For the violations of 18 U.S.C. § 1962 described in this Complaint, plaintiffs are entitled to compensatory and treble damages in an amount to be determined at trial, and to a prospective order directing Defendants to disgorge their ill-gotten gains and to refrain from similar conduct in the future.

### COUNT III – RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT
(Civil RICO, 18 U.S.C. § 1962(d))

127.    Plaintiff realleges the above paragraphs as though fully set forth herein.

128.    In violation of 18 U.S.C. § 1962(d), Defendants and others whose identities are known only to Defendants conspired to violate the provisions of 18 U.S.C.(c) in that, beginning no later than 2015 and continuing through today, they knowingly agreed and conspired to conduct or participate in, directly or indirectly, the affairs of the Enterprise through the pattern of racketeering activity described above.

129.    The volume and frequency of the fraudulent activity, and the continuance of the scheme for at least six years—including at least three years after the last Individual Defendant became involved—could not have occurred without the consent and knowing collusion of Defendants and other conspirators.

130.    As part of, and in furtherance of, their conspiracy, each Defendant agreed to and conspired in the commission of the many predicate acts described above, with the knowledge that those acts were in furtherance of that pattern of racketeering activity.  As part of and in furtherance of their conspiracy, each Defendant agreed to and did commit at least two predicate acts of racketeering.

131.    Plaintiff's property interests have been injured by, and as a direct and proximate result of, Defendants' violations of 18 U.S.C. § 1962(d).

132.    By reason of Defendants' violations of 18 U.S.C. § 1962(d), Plaintiffs and putative class members are entitled to compensatory and treble damages in an amount to be determined at trial.

### COUNT III – N.Y. GEN. BUS. LAW § 349

133.    Plaintiff realleges the above paragraphs as though fully set forth herein.

134.    New York General Business Law section 349(a) prohibits "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state."

135.    An individual "injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions." N.Y. Gen. Bus. Law § 349(h).

136.    Defendants engaged in deceptive acts and practices in the conduct of their businesses as described above.

137.    Defendants' conduct has had a broad impact on consumers at large.

138.    Defendants committed the deceptive acts and practices willfully and/or knowingly.

139.    Defendants' wrongful and deceptive acts have caused injury and damages to Plaintiffs and class members and unless enjoined will cause further irreparable injury.

[ 31 ]

140.    Defendants' violations include, but are not limited to:

    **a.**  Seeking to collect debts not owed to Defendants;

    **b.**  Seeking to collect debts for which Defendants have and can obtain no proof of ownership;

    **c.**  Making false and misleading statements regarding their ownership of debts and the statuses of debts;

    **d.**  Falsely threatening legal action;

    **e.**  Falsely threatening repossession or seizure of assets; and

    **f.**  Falsely threatening arrest.

141.    As a direct and proximate result of these violations of § 349, Plaintiff and putative class members have suffered compensable harm and are entitled to preliminary and permanent injunctive relief and to recover actual and treble damages, costs and attorney's fees.

WHEREFORE, Plaintiff respectfully requests the Court enter judgment jointly and severally as against all Defendants:

    a.    Certifying this case as a class action pursuant to Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, with a class defined as:

> All natural persons who have made or will make payments to Defendants or any business entity under their ownership or control, whether through a third-party payment processor or directly, as partial or total satisfaction or settlement of a debt, where the debt was not originally owed to Defendants or any business entity under their ownership or control.

b.      Declaring the aforementioned acts and practices illegal in violation of the

FDCPA, RICO, and N.Y. Gen. Bus. Law § 349;

c.      Enjoining and directing Defendants:

   i.   to cease and forever forego collecting on or transferring the

        spreadsheets of debtor information presently in their possession;

   ii.  to cease purchasing debts which they can have no legal right to

        collect; and

   iii. to adopt training regimens and call scripts that ensure their

        collection agents do not threaten litigation, seizure of assets, or

        arrest;

d.      Awarding to Plaintiff and members of the putative class:

   i.   actual and/or compensatory damages against all Defendants in an

        amount to be proven at trial;

   ii.  treble damages pursuant to RICO;

   iii. statutory damages pursuant to the FDCPA;

   iv.  treble damages pursuant to GBL § 349;

   v.   disbursements, costs, and attorneys' fees pursuant to the FDCPA,

        RICO, and NY GBL § 349; and

   vi.   statutory damages of $1,000.00 as provided under 15 U.S.C. §

         1692k(a)(2)(A); and

e.      Granting such other and further relief as the Court may deem just and

appropriate.

[ 33 ]

**A TRIAL BY JURY IS DEMANDED.**

Dated:  September 27, 2021

                                        By:  s/ Geoffrey Parker

                                        Geoffrey C. Parker
                                        HILTON PARKER LLC
                                        7544 Slate Ridge Blvd.
                                        Reynoldsburg, OH 43068
                                        Tel: (614) 992-2277
                                        Fax: (614) 927-5980
                                        gparker@hiltonparker.com
                                        *Attorney for Plaintiff*